In the Matter of the Liquidation of LAWYERS TITLE AND GUARANTY COMPANY.

In the Matter of the Application of LUCILLE LEMBERG, EVELYN J. LUBIN and Others.

Supreme Court, Additional Special Term, New York County, January 4, 1938.

*Raphael H. Weissman,* for the Globe and Rutgers Fire Insurance Company, for the motion.

*Abraham N. Geller* [*Abraham N. Geller* and *Robert B. Block* of counsel], for Lucille Lemberg, Evelyn J. Lubin and others, opposed.

*Maurice B. & Daniel W. Blumenthal,* for Warren C. Fielding, trustee, and others, opposed.

*Wagner, Quillinan & Rifkind* [*Simon H. Rifkind* and *Sidney R. Nussenfeld* of counsel], for the creditors committee of the New York Title and Mortgage Company.

*Thomas Keogh,* for Louis A. Green and others, opposed.

*D. William Leider,* for Louis H. Pink, Superintendent of Insurance of the State of New York, as liquidator of the Lawyers Title and Guaranty Company.

FRANKENTHALER, J. This is an application by Globe and Rutgers Fire Insurance Company, a stockholder of Lawyers Title and Guaranty Company, now in the process of liquidation by the Superintendent of Insurance, to vacate a previous order of this court. Said order granted an application by certain holders of mortgage investments issued and guaranteed by Lawyers Title and Guaranty Company (1) for leave to intervene in the pending liquidation proceeding in order to submit a proposed plan of reorganization, (2) for the assumption of jurisdiction over the plan by the court, and (3) for the designation of a referee to hold hearings as to the advisability and feasibility of the plan, any modifications or amendments thereof which might be desirable and proper, and/or any alternative plans which might be submitted to the referee. The court appointed Hon. Edward R. Rayher as referee and provided in its order that unless the reorganization proved successful, the only expenses to be allowed would be the fee of the referee, the cost of the stenographer's minutes, and the actual cost of printing, mailing and publishing notices to creditors and stockholders.

Attention should be called, at the very outset, to the fact that the Globe and Rutgers Fire Insurance Company, which is making the present motion, was a party to the proceedings which resulted in the making of the order sought to be vacated and, although represented by counsel who was present during the entire hearing, nevertheless raised no objection to the granting of the relief embodied in said order and took no appeal therefrom. It must, therefore, as pointed out presently, be deemed to have waived any right which it might otherwise have had to question the validity of the order. Although the motion could accordingly be denied on this ground, the court prefers to decide the application upon the merits instead of disposing of it on technical considerations.

Although the Superintendent of Insurance expressly conceded the court's jurisdiction to grant the order, the application to vacate is predicated upon the contention that the order was beyond the power of the court to make in that the reorganization proceedings contemplate liquidation of the company by creditors, in violation of the Insurance Law which confers the power of liquidation of companies subject to the supervision of the Insurance Department solely and exclusively upon the Superintendent of Insurance. In order to determine whether this contention is well founded it is necessary to ascertain whether the reorganization proceedings do in fact look to or involve an unlawful delegation of the Superintendent's statutory duty to liquidate. The proposed plan of reorganization which is annexed to the petition in the reorganization

proceeding is similar in its general scheme to a plan of reorganization which has been approved by this court in connection with Lawyers Mortgage Company (*Matter of Lawyers Mortgage Company*, 163 Misc. 680). It is an essential feature of each of these plans that the principal asset of the company which is in the Superintendent's charge are to be sold by him pursuant to court order, upon terms satisfactory to him and approved by the court. Although the reorganization managers are to have the power to become the purchasers at the sale, they are not required to do so, and it is recognized that the assets may be bought by others. In the latter event those portions of the plan which provide for liquidation by a realization corporation are not to become operative. It is only in the contingency that the reorganization managers succeed in purchasing the assets at the sale for the benefit of persons assenting to the plan that the latter retain any interest in the further liquidation of the assets. The identity of the purchaser at the sale is, however, wholly immaterial, for what happens to the assets after they are sold by the Superintendent is no legitimate concern of the creditors and stockholders of the company unless the purchase is made on their behalf as assenters to the plan. The rights of non-assenters are adequately protected by the requirement that the sale of the assets by the Superintendent must be for a price approved by him and also by the court. After the sale the non-assenting creditors and stockholders have no further interest in the assets, from a legal standpoint, their rights being confined to the consideration received for the assets.

That the Superintendent of Insurance may, with the court's approval, lawfully sell the assets of a company which he is liquidating is not open to serious doubt. Section 421 of the Insurance Law expressly provides that " the Superintendent may, subject to the approval of the court, (a) sell or otherwise dispose of the real and personal property, or any part thereof, of an insurer against whom a preceeding has been brought under this article." In *Broderick* v. *Betco Corporation* (149 Misc. 245; affd., 244 App. Div. 710; affd., 269 N. Y. 642) this court upheld a sale of the assets of the Bank of Europe Trust Company, made by the Superintendent of Banks as liquidator of said institution, overruling (p. 248) the contention of the defendant in that case that the Superintendent of Banks had unlawfully delegated the power and authority to liquidate vested in him by statute. The sale in the case cited was made pursuant to the similar provision of section 69 of the Banking Law that the Superintendent of Banks " upon such terms as the court shall direct, may sell or otherwise dispose of all or any of the real and personal property of such corporation or banker."

Certain of the assets, namely, stock of the subsidiary title company organized by the Superintendent shortly after he became rehabilitator of the company, are excluded in the proposed plan from the assets to be sold, as similar assets were in the plan of reorganization approved for Lawyers Mortgage Company. These assets are not, however, to be intrusted by the Superintendent to others for purposes of liquidation, but are to be distributed among creditors, stockholders and others "in such proportion and for such consideration and upon such terms as may be determined to be fair and equitable, in the light of the evidence adduced at the hearings upon the Plan." Until a definite plan of reorganization is submitted for the court's approval it cannot be known whether these assets are to be distributed instead of cash in payment of creditors' claims or are to be sold to creditors and stockholders, or are to be partly distributed and partly sold. Any of these means of disposing of the assets in question would be lawful, for they are within the Superintendent's power to " *sell or otherwise dispose of* the real and personal property or any part thereof." (Insurance Law, § 421.) (Italics the court's.)

The fact that the proceedings looking toward the reorganization of Lawyers Title and Guaranty Company were initiated by holders of mortgage investments and not by the Superintendent of Insurance himself does not affect the situation, in view of the fact that counsel for the Superintendent of Insurance, at the hearing of the application which resulted in the order now sought to be vacated, expressly stated that " The Superintendent has no earthly objection and in fact consents to the acceptance of or the assumption of jurisdiction by this court." Counsel for the Globe and Rutgers Fire Insurance Company, the moving party on the present motion, having taken the position that the Superintendent of Insurance opposed the prior proceeding for the court's assumption of jurisdiction in an effort to work out a plan of reorganization, the Superintendent has submitted a memorandum containing the following statement: " Counsel for the Superintendent of Insurance thereupon made it clear to the Court that the Superintendent did not oppose the assumption by the Court of jurisdiction over the reorganization proceeding." It is emphatically stated that the Superintendent of Insurance did not raise any jurisdictional question.

The position taken by the Superintendent in regard to the proposals for the reorganization of Lawyers Title and Guaranty Company is in line with the policy adopted by the Insurance Department shortly after the Superintendent of Insurance commenced rehabilitation of the various mortgage guaranty companies. As

early as August 30, 1934, Howard C. Spencer, counsel to Title and Mortgage Rehabilitation Bureau of the New York State Insurance Department, at a meeting of the section on Insurance Law of the American Bar Association, stated that "contrary to superficial impression the liquidation of the old company does not mark the end of possibilities of reorganization" and pointed out that even without legislation it was possible to effect reorganization by the device of a judicial sale: "One type of reorganization centers about the device of judicial sale. After outstanding claims have been determined cash distribution of company assets cannot occur for a considerable time because many millions of dollars of these assets consist of mortgages and real estate which cannot be converted immediately into cash without substantial sacrifices. Under these circumstances perhaps when the time comes some form of mutualization of the companies to provide for a gradual, orderly liquidation may take place."

On March 14, 1935, the then Superintendent of Insurance, Hon. George S. Van Schaick, in an address delivered before the Association of the Bar of the City of New York, said: "Among the companies in rehabilitation are some with well-established organizations which can be employed profitably in whatever form of mortgage business is finally evolved. This circumstance represents an asset to certificate holders and others who are creditors of these companies and, in the event such creditors are paid in full, to the stockholders of the companies. The worth of this asset depends upon the use to which these organizations are put. If they are indefinitely confined to the mere servicing of existing mortgages, their value will become less and will eventually disappear. If they are encouraged to survive and to adapt themselves to such form as the mortgage business shall take in the future, it is likely that the value of these organizations will increase."

In the annual reports of the present Superintendent of Insurance, Hon. Louis H. Pink, submitted for the calendar years ending December 31, 1935, and December 31, 1936, respectively, Superintendent Pink referred to the type of reorganization which requires no legislation to legalize it, in the following language: "One type [of reorganization] accompanies and is a natural incident to the liquidation of these companies. When the company is placed in liquidation claims are comparatively quickly determined. At this point rights against the assets of the company become known. In many cases, however, because of the lack of a real estate market, it will be years before these assets can be reduced to cash. In lieu of an indefinite postponement of distribution which would require the services of the Superintendent for many years as a

liquidating custodian of the assets it may be possible to devise some distribution in kind by creating a liquidating corporation and distributing the stock to those entitled to it. This places management of the assets into the hands of those who are chosen by the creditors. It is in one sense a mutualization of the old company. If the creditor-owners desire to have the company again engage in the mortgage business on a permanent basis with or without new capital, they may, of course, do so provided they can qualify their institution under the then existing laws. This type of reorganization may be desirable, if the assets are frozen and it is not possible to pay reasonable cash dividends promptly, and the creditors prefer the management of a private group to that of the Department." Although taking the position that he did not feel it incumbent upon him to sponsor or propose such plans of reorganization on the ground that they were the function primarily of those who desired reorganization, Superintendent Pink added: " When the Department is convinced that any plan thus proposed is fair and equitable and is desired by a substantial majority of the parties affected by the plan, it will give its approval and support to the proposal."

It is hardly possible that the proceedings before the referee will result in the submission to the court of a plan of reorganization containing provisions which do call for an unlawful delegation by the Superintendent of Insurance of his statutory duty. Such a plan would undoubtedly be opposed by the Superintendent and would, of course, be disapproved by this court. At this time, however, these possibilities are purely conjectural. As it is much more likely that a reorganization plan may be worked out and presented for judicial approval which does not involve any unlawful delegation of the Superintendent's powers and which meets with his approval, there is no proper basis, at this time, for granting the present application to vacate the order designating a referee to conduct hearings upon the plan proposed, and any modifications or other plans which may be submitted to him. There is nothing now before the court to justify it in assuming that the plan which will evolve from the proceedings before the referee will be an invalid one.

Even apart from the merits the present application would have to be denied, as pointed out previously, in view of the fact that the moving party participated in the hearing of the prior application and did not object to or oppose the relief therein sought. It thereby lost any right which it might otherwise have possessed to assail the propriety of the order granting said previous motion.

This would not be so, it is true, if the order was one which the court was without jurisdiction to make. The court did, however, possess jurisdiction of the subject-matter (See *Matter of Kane*, [App. Div.] N. Y. L. J. June 1, 1936, p. 2782, not reported), and its order is, therefore, one which could be attacked by the present movant only if the latter had resisted the granting of the prior application, and then only upon appeal. In the case cited the Appellate Division denied an application for an order of prohibition directing this court to refrain from taking jurisdiction over two proposed plans for the reorganization of Lawyers Mortgage Company, which application was based on the ground, among others (to quote from the petition), that " a feasible plan of reorganization is neither rehabilitation nor liquidation under the Insurance Law," and that, therefore, " the Supreme Court has no power to entertain a plan of reorganization which permits resumption of business without full payment."

Some point has been made of the fact that a recently enacted statute providing for the reorganization of title and guaranty companies (Laws of 1937, chap. 926) is by its terms limited to companies " in rehabilitation." The failure of the statute to extend to companies in liquidation might perhaps prevent a reorganization of such company under a plan calling for the delegation of the Superintendent's statutory duty to liquidate, whereas that kind of a reorganization would receive the sanction of the new statute if the company were in rehabilitation. The restricted scope of the statute does not, however, bar a reorganization under a plan which involves no unlawful delegation of the Superintendent's duties and which is perfectly legal without any express statutory authorization. The method of reorganization proposed in the instant case does not contemplate any illegal delegation of the Superintendent's duties, nor may it be assumed that the plan, if any, which will finally be submitted to the court will involve such an improper delegation.

The motion to vacate is accordingly denied.